UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CRAIG BARFIELD,

                Plaintiff,

v.

KENNETH D LEWIS,

                Defendant.

Case No. 2:21-cv-01099-RAJ-TLF

REPORT AND RECOMMENDATION

Noted for December 2, 2022

This matter is before the Court on defendants' motion for summary judgment. Dkt. 22. Plaintiff (unrepresented and *in forma pauperis*) brought this 42 U.S.C. § 1983 action alleging his former mental health counselor, defendant Kenneth D. Lewis, retaliated against plaintiff for filing grievances against him. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the Court recommends that defendant's motion for summary judgment on plaintiff's retaliation claim be DENIED.[1]

BACKGROUND

Plaintiff is an inmate at Monroe Correctional Complex ("MCC") Special Offenders Unit ("SOU"). Plaintiff initiated this matter on August 17, 2021, filing a complaint alleging

---

[1] Also pending are two motions plaintiff has filed regarding discovery in this matter. Dkts. 21, 30. The Court will address those motions in a separate order.

REPORT AND RECOMMENDATION - 1

defendant Lewis violated his First Amendment rights by retaliating against him after plaintiff filed grievances and letters complaining about defendant Lewis's conduct. Dkt. 6 at 4.[2] Plaintiff seeks an award of damages but does not seek declaratory or injunctive relief. *Id*. at 23–24.

Defendant Lewis filed a motion for summary judgment (together with the declarations of Madison Burke and Dianna Rule) seeking summary judgment dismissing plaintiff's claim on the ground that Lewis is entitled to qualified immunity. Dkts. 22, 23, 24. Plaintiff has filed a response (Dkt. 36).[3] Defendant has replied. Dkt. 39.

## FACTS

While defendant Lewis does not concede the facts as alleged by plaintiff, he asserts that he is entitled to summary judgment even if those facts are assumed to be true. Dkt. 22 at 2. Accordingly, for purposes of this motion only, the Court will assume the truth of factual assertions in plaintiff's complaint, as supplemented by his declaration, deposition testimony, and sworn discovery responses.

Plaintiff alleges that defendant Lewis treated him unprofessionally during group classroom sessions, including making inappropriate remarks, and sarcastically asking personal and uncomfortable questions. Dkt. 6 at 5. Plaintiff also asserts he was informed defendant Lewis had caused plaintiff's incentive television to be removed by

---

[2] Plaintiff's complaint also includes factual allegations discussing the processing of his grievances regarding defendant Lewis's conduct. However, as discussed below, the complaint neither alleges a legal claim pertaining to grievance processing, nor could it allege a viable claim.

[3] The Court granted an extension of time for plaintiff to respond after receiving a letter from plaintiff indicating there had been a problem with the original filing of the response. Dkt. 36. Plaintiff's response, together with multiple exhibits and a declaration, was timely filed on June 23, 2022.

REPORT AND RECOMMENDATION - 2

falsely reporting plaintiff was not adequately following his mental health treatment plans. *Id*. at 5–6.

Plaintiff states he began filing communications and grievances against defendant Lewis, including: communicating with Lewis's supervisors by sending an offender's "kite" on June 7, 2019; and a direct meeting with one supervisor, Dr. Cogburn, on June 11, 2019—after which Dr. Cogburn assured plaintiff he would "personally address this matter with Mr. Lewis." *Id*. at 7.

Plaintiff states that the next day (June 12, 2019), while he was writing at his cell desk, he heard defendant Lewis on his tier "shouting out where is Barfield at," while banging his fist on cell doors. *Id*. at 8; *see also* Dkt. 37 at 73; Dkt. 23-1 at 4. Lewis then appeared at plaintiff's cell front, "knocking repeatedly on it and at the same time yelling at me to 'get-up' and come to the door," but plaintiff ignored the request. Dkt. 6 at 8; Dkt. 23-1 at 4.

Plaintiff states that, suddenly, his cell door opened and defendant Lewis entered his cell and "was right upon me . . . while yelling at me and pointing his right hand finger within my face." Dkt. 6 at 9; *see also* Dkt. 37 at 74; Dkt. 23-1 at 4. Plaintiff states defendant Lewis "kept shouting over and over again," yelling "you could of came to me about this. How dare you go behind my back. Just who do you think you [are]." Dkt. 6 at 9; *see also* Dkt. 37 at 74 (defendant Lewis "verbally intimidated[d] plaintiff by saying "how dare you go behind my back" while "aggressively pointing his fingers toward my face"); Dkt. 23-1 at 5 (defendant Lewis stated "you got a problem with me? You come see me. Don't you ever go behind my back" while pointing his finger at plaintiff's face); Dkt. 37 at 16 (defendant Lewis "threateningly" said "How dare you go behind my back if

REPORT AND RECOMMENDATION - 3

you got something you want to say to me, you say it to my face" while "aggressively pointing his fingers toward my face"). Plaintiff asserts that Lewis "kept shouting over and over again" and told him "don't you ever go behind my back again." Dkt.6 at 9; Dkt. 23-1 at 6.

Plaintiff states defendant Lewis "ball[ed] his fists up at me . . . while he was there within my cell . . . to intimidate or antagonize me . . . that he was generally prepared for a physically violen[t] confrontation with me." Dkt. 37 at 74; *see also* Dkt. 37 at 16 (defendant Lewis was "demonstratively 'balling-up' his fists" during the encounter). Plaintiff's complaint further alleges:

> I thought for just[ ] those few minutes that my physical wellb[e]ing may ha[ve] been put in jeopardy while Mr. Lewis was there within my cell alone with me and the ways he was carrying on I truly felt that my life was in danger that he was going to physically attack me right in my cell!

Dkt. 6 at 9. Plaintiff observes that he was a "57 year old 165 pound 5′11″ black man," and defendant Lewis was a "237 pound 40 year old 6′3″ intimidating white man." Dkt. 6 at 10.

Plaintiff states he asked defendant Lewis to leave his cell; at that time, Corrections Officer Beecroft also appeared at the cell front and instructed defendant Lewis to leave. Dkt. 37 at 74; Dkt. 23-1 at 6. Defendant Lewis then backed out of the cell, took one step back in, then backed out again. Dkt. 6 at 9–10; Dkt. 23-1 at 7; Dkt. 37 at 75.

Plaintiff states that as defendant Lewis was leaving, he "told me don't do it again. As if implying 'or else' or making it seem to me that [there would] be consequences involved, next time around with him." Dkt. 37 at 75; *see also* Dkt. 37 at 16 (defendant

REPORT AND RECOMMENDATION - 4

Lewis said "upon his departure out of my cell door that I better not do it again"). After defendant Lewis left the cell, the door was closed and Lewis left the tier. Dkt. 6 at 10.

DISCUSSION

A.  Legal Standard

    1.  Summary Judgment Standard

Summary judgment is supported "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A fact "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim" is considered a material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When reviewing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* 477 U.S. at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Id*. If the moving party meets the initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; their response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court may not disregard evidence

solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. Univ. of Oregon,* 698 F.3d 715, 728–29 (9th Cir. 2012).

2. Section 1983 Standard

To state a claim under 42 U.S.C. § 1983, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. Int'l Bus. Machines*, 637 F.2d 1350, 1355 (9th Cir. 1981). A plaintiff may not hold supervisory personnel liable under § 1983 for constitutional deprivations under a theory of supervisory liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

B. Qualified Immunity—Retaliation Claim

Defendant argues that he is qualifiedly immune from plaintiff's claims for damages. Dkt. 22.

REPORT AND RECOMMENDATION - 6

Unless plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: (a) the official(s) violated a federal statutory or constitutional right and (b) at the time of the alleged act or failure to act—there was clearly established law that defined the contours of the federal right, such that every reasonable official would understand that what they are doing is unlawful. *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) whether it would be clear to every reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) whether the defendant's conduct violated a constitutional right," then summary judgment granting qualified immunity is not appropriate. *Daniels Sharpsmart, Inc. v. Smith,* 889 F.3d 608, 617 (9th Cir. 2018); *Bonivert v. City of Clarkston*, 883 F.3d 865, 871–72 (9th Cir. 2018).

1.   <u>Constitutional Violation</u>

Plaintiff's sole legal claim alleges defendant Lewis violated his First Amendment rights by retaliating against him for asserting grievances. An allegation of retaliation for a prisoner's exercise of his First Amendment right to file grievances or to pursue litigation against prison officials may support a claim under § 1983; without this constitutional protection, inmates would be left without a viable mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

Plaintiff must prove five basic elements to prevail on such a claim of retaliation: (1) an assertion that a state actor took some adverse action against an inmate (2)

REPORT AND RECOMMENDATION - 7

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567–568. The plaintiff must also show the protected conduct was the substantial or motivating factor driving the prison official's conduct. *See, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–287 (1977); *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009).

The facts reported by plaintiff in this case demonstrate that plaintiff has met the burden to come forth with evidence concerning the first and fourth elements (adverse action with a chilling effect) of retaliation. Defendant Lewis angrily banged on plaintiff's cell door, entered his cell, yelled at plaintiff while pointing his finger at plaintiff's face and "balling up his fist" and acted in a manner that led plaintiff to feel fear of physical violence. Dkt. 6 at 8–10; Dkt. 37 at 16, 73–76; Dkt. 23-1 at 4–6.

Threats of physical violence constitute adverse action. *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012) (prison official's threat to punch an inmate for filing a grievance was an adverse action). Plaintiff reports that he felt intimidated. Dkt. 6 at 9. Furthermore, allegations of harm are sufficient to state a retaliation claim without any additional allegation of a chilling effect. *See Pratt v. Rowland,* 65 F.3d 802, 807–08 (9th Cir. 1995); *Watison,* 668 F.3d at 1114; *Rhodes,* 408 F.3d at 567–68 n. 11 ("[H]arm that is more than minimal will almost always have a chilling effect.").

With respect to the second and third elements, plaintiff has submitted facts demonstrating defendant Lewis's actions referred to and were a direct reaction to plaintiff's grievances. The filing of grievances is protected activity. *Rhodes*, 408 F.3d at 567. Defendant Lewis's retaliatory motive is reflected both in the words plaintiff reports

REPORT AND RECOMMENDATION - 8

he used (which referred directly to plaintiff's grievances), and the timing of the incident (the day after plaintiff met with defendant Lewis's supervisor). *See Watison*, 668 F.3d at 1114 ("because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.").

Finally, defendant Lewis has proffered no legitimate penological goal that could be met by his entry into plaintiff's cell to engage in threatening and intimidating behavior in reaction to the filing of grievances. *See Watison*, 668 F.3d at 1116 ("threatening to punch a prisoner serves no penological interest").

The facts submitted by plaintiff (which defendant accepts as true for purposes of this motion) establish a violation of plaintiff's First Amendment rights.

2. <u>Clearly Established Law</u>

Even if a constitutional violation is established, qualified immunity may still protect a defendant if the right is not clearly established. The Court must therefore determine whether any reasonable officer in the defendant's shoes would have been on notice that the conduct—i.e., entering plaintiff's cell and threatening him in response to the filing of a grievance—was unlawful under the circumstances. *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). "[R]easonableness is judged against the backdrop of the law at the time of the conduct," and although the law "does not require a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoted sources omitted, alteration added).

The contours of "clearly established law" should not be drawn so stringently "that an official action is protected by qualified immunity unless the very action in question

has previously been held unlawful." *Russell v. Lumitap,* 31 F.4th 729, 737 (9th Cir. 2022) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

A plaintiff must show either "controlling authority in their jurisdiction at the time of the incident which clearly established" the right being asserted, or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [their] actions were lawful." *Wilson v Layne,* 526 U.S. 603, 617 (1999); *Russell,* 31 F.4th at 737. If a right is clearly established by decisional authority of the Supreme Court or the Ninth Circuit, then the Court need inquire no further. *Ballentine v. Tucker,* 28 F.4th 54, 64 (9th Cir. 2022). It is plaintiff's burden to show that legal precedent was clearly established at the time of the incident on June 12, 2019. *Wilson,* 526 U.S. at 614; *Russell,* 31 F.4th at 737.

Here, the law is clearly established that a prison official violates the First Amendment by threatening physical harm in response to a grievance. In *Watison*, the Ninth Circuit found a violation under circumstances that are similar to those alleged by the plaintiff in the instant case:

> Watison claimed that Correctional Officer Danilo Santos retaliated against him for filing grievances against Santos. He claimed that on July 7, 2009, Santos "became very angry with" Watison, "walked directly in [Watison's] face and stated 'your emergency grievance isn't going to stand,' " and threatened to hit Watison in the mouth for a complaint Watison was in the process of filing against Santos.

668 F.3d at 1115.

Here, as in *Watison*, plaintiff had filed grievances and defendant Lewis angrily responded by walking into plaintiff's cell and acting in a manner where physical violence was being threatened. *Watison*, decided in 2012, places it beyond debate that such conduct would be evidence of retaliation in violation of the First Amendment. Indeed,

REPORT AND RECOMMENDATION - 10

the Ninth Circuit has made it clear that even a more veiled threat constitutes actionable retaliation. *Brodheim*, 584 F.3d at 1270–71 (officer's statement to grievant that "I'd like you to be careful what you write" constitutes adverse action with a chilling effect).

The facts submitted by plaintiff—and accepted as true for purposes of this motion—support a showing sufficient to overcome qualified immunity because defendant's conduct may have violated a First Amendment right that was clearly established at the time; therefore defendant's motion for summary judgment is not supported. Defendant Lewis's motion for summary judgment dismissing plaintiff's retaliation claim should be DENIED.

C.  <u>Grievance Processing</u>

Plaintiff's complaint also contains factual allegations pertaining to the processing of his grievances regarding the conduct of defendant Lewis. Dkt. 6 at 10–16. But plaintiff's sole legal claim alleges defendant Lewis violated plaintiff's First Amendment rights by retaliating against him; it makes no legal claims relating to grievance processing. *Id*. at 4. In addition, the complaint names only a single defendant—plaintiff's former counsellor, defendant Lewis. *Id*. at 3. The complaint does not name as defendants any of the individuals who participated in processing plaintiff's grievances—and does not allege that defendant Lewis personally participated in the grievance decisions. Even liberally construed, plaintiff's complaint therefore does not state any due process claim for the processing of plaintiff's grievances.

Furthermore, it would be futile to permit plaintiff to amend his complaint to allege a grievance-processing claim. *See Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial of leave to amend is appropriate where amendment would be futile). Prisoners do not have a stand-alone due process rights related to the administrative grievance process.

*See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding there is no liberty interest entitling prisoners to a specific grievance process). "Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances." *Grigsby v. Hubert*, No. CIV S091067MCECMKP, 2009 WL 1861172, *1 (E.D. Cal. June 29, 2009).

Plaintiff has not, and cannot, state a claim arising out of the processing of his grievances. To the extent that the complaint can be construed as alleging such a claim, it should be dismissed without leave to amend.

## CONCLUSION

Based on the foregoing discussion, the Court recommends that defendants' motion for summary judgment be DENIED with respect to plaintiff's retaliation claim. To the extent the complaint can be construed as alleging a claim regarding the processing of plaintiff's grievances, any such claim should be dismissed without leave to amend. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

directed to set the matter for consideration on December 2, 2022, as noted in the caption.

Dated this 16th day of November, 2022.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13